RECORD NO. 17-1347

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

DEL WEBB COMMUNITIES, INC.; PULTEGROUP, INCORPORATED,

*Plaintiffs-Appellees,*

v.

ROGER F. CARLSON; MARY JO CARLSON,

*Defendants-Appellants,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT BEAUFORT

## OPENING BRIEF OF APPELLANTS

William Jefferson Leath, Jr.
Michael S. Seekings
LEATH BOUCH &
SEEKINGS, LLP
92 Broad Street
P. O. Box 59
Charleston, SC 2940
(843) 937-8811
jl@leathbouchlaw.com
mseekings@leathbouchlaw.com

Phillip Ward Segui, Jr.
SEGUI LAW FIRM, PC
Suite A
864 Lowcountry Boulevard
Mt. Pleasant, SC 29465
(843) 884-1865
psegui@seguilawfirm.com

*Counsel for Appellants*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

# TABLE OF CONTENTS

Table of Authorities ................................................................ ii

Jurisdictional Statement ...........................................................1

Statement of Issues....................................................................1

Statement of Case ......................................................................2

Standard of Review ...................................................................2

Summary of Argument ..............................................................3

Argument ...................................................................................5

     I.    The District Court Erred in Failing to Construe the
         Arbitration Contract Clause at Issue to Determine that
         the Clause Indicates a Clear and Unmistakable Intent
         of the Parties to Delegate to the Arbitrator the
         Decision on Class Treatment...............................................5

     II.    The District Court, in Vacating the Arbitrator's Award,
         Erred in Reviewing the Matter *De Novo* ..........................11

     III.    Federal Jurisdiction Over This Matter Is, and
         Was Lacking.......................................................................16

Conclusion ...............................................................................20

Statement Regarding Oral Argument .......................................20

Certificate of Compliance ........................................................21

Certificate of Service ...............................................................22

i

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Apex Plumbing Supply Inc., v. U.S. Supply Co.,*
142 F.3d 188 (4th Cir. 1998) .............................................................................14, 15

*Bazzle v. Green Tree Fin. Corp.,*
351 S.C. 244, 569 S.E.2d 349 (S.C. 2002) ...........................................................10

*Choice Hotels Int'l v. SM Property Mgmt.,*
519 F.3d 200 (4th Cir. 2008) ................................................................................ 13

*Del Webb Communities, Inc. v. Carlson,*
817, F.3d 867 (4th Cir. 2016) ..................................................................1, 3, 8, 17

*Gagliano v. Reliance Std. Life Ins. Co.,*
547 F.3d 230 (4th Cir. 2008) ...................................................................................3

*Hill v. Lockheed Martin Logistics Mgmt.,*
354 F.3d 277 (4th Cir. 2004) ...................................................................................2

*Oxford Health Plans, LLC v. Sutter,*
133 S.Ct. 2064 (2013) ....................................................................................... 6, 7, 9

*Patten v. Signator Ins. Agency Inc.,*
441 F.3d 230 (4th Cir. 2006) ..................................................................... 13, 14, 15

*Reed Elsevier, Inc. v. Crockett,*
734 F.3d 594 (6th Cir. 2013) ....................................................................7, 8, 9, 10

*Skelly Oil Co. v. Phillips Petroleum Co.,*
399 U.S. 667 (1950) ...............................................................................................17

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.,*
559 U.S. 662 (2010) .................................................................................................9

*Three S Delaware, Inc. v. DataQuick Info.Sys.,*
492 F.3d 528 (4th Cir. 2007) .................................................................................14

*Upshur Coals Corp. v. United Mine Workers Dist.*,
933 F.2d 225 (4th Cir. 1991) ...........................................................14, 15

*U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*,
204 F.3d 523 (4th Cir. 2000) ...........................................................11, 14

*Vaden v. Discover Bank*,
556 U.S. 49 (2009) .................................................................................17

## Statutes

9 U.S.C. § 4 .............................................................................................18

9 U.S.C. § 10(a)(4) ................................................................................... 9

28 U.S.C. § 1332 ...............................................................1, 4, 16, 18, 19

S.C. Code Ann. § 15-48-10 (1976) ........................................................18

## Other Authorities

American Arbitration Association, Construction Industry Arbitration
 and Mediation Rules, effective July 1, 2001 ..................................5, 9, 10

American Arbitration Association, Construction Industry Arbitration
and Mediation Rules, Supplementary Rules for Class Arbitrations,
effective October 8, 2003....................................................................9, 10

SCRCP, Rule 23..........................................................................................18

## JURISDICTIONAL STATEMENT

This Court, in its earlier opinion *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (2016), found that the District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a), due to diversity of citizenship and jurisdictional amount, and additionally due to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act.

Appellants challenge Federal Jurisdiction, as is set out below, and have raised lack of Federal jurisdiction at each and every stage of these proceedings, and do so now.

## STATEMENT OF ISSUES

The District Court, in its Order under appeal (JA 350-353), vacated an Award of an American Arbitration Association (hereinafter "AAA") Arbitrator (JA 140-146), pursuant to a Motion to Vacate filed by Appellees (JA 106-140). After vacating the AAA Award, the District Court granted Summary Judgment to the Appellees. This appeal taken from the District Court's vacation of the Arbitrator's Award presents three issues:

1. Did the District Court err in failing to consider the Arbitration Clause at issue here, which incorporates by reference the 2002 AAA rules, where the arbitration clause "clearly and unmistakably" provides that the

1

Arbitrator is empowered to render a decision as to the propriety of Class Arbitration;

2. Did the District Court err in failing to follow a deferential standard of review of the Arbitrator's Award when ruling on the Motion to Vacate the Arbitration Award, rather than applying an improper *de novo* standard of review;

3. Is Federal jurisdiction lacking?

## STATEMENT OF CASE

This Appeal flows from an Order Vacating an AAA Arbitrator's Award and then granting Summary Judgment, following a remand to the District Court pursuant to this Court's opinion cited above. The District Court heard oral arguments on Appellees' Motion to Vacate and for Summary Judgment on January 30, 2017 (JA 318-349), and two (2) days later, issued its Order Vacating the Arbitrator's Award (JA 350-353). Appellants moved the District Court to reconsider that Order (JA 354-359), and the District Court denied that motion on February 22, 2017 (JA 360-361). This Appeal followed.

## STANDARD OF REVIEW

This Court reviews the District Court's grant of summary judgment *de novo*. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 283 (4th Cir. 2004) (*en*

banc). This Court reviews the District Court's conclusions of law *de novo*. *Gagliano v. Reliance Std. Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008).

## SUMMARY OF ARGUMENT

The opinion of this Court in *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867 (4th Cir. 2016), focused on the grant of summary judgment to the Appellants, solely on the issue of "who decides" whether Class treatment is proper in arbitration – the arbitrator or the Court. The opinion, in contradistinction to some other Federal Circuits, finds that since this issue touches on the issue of "arbitrability," a Court should decide it. What this Court's opinion did not do was discuss, analyze, or construe the actual Award properly issued by the AAA Arbitrator, nor did it undertake to review that Award pursuant to and in accordance with the standard of review for a Motion to Vacate, as the District Court was required to do.

On remand, the District Court improperly reviewed the matter *de novo*, as if the arbitration award did not exist (JA 350-353). The matter before the District Court was not the *de novo* construction of an arbitration clause. Rather, it was the review of an existing arbitration award premised on an arbitration clause drafted by Appellees, brought to the Court not by way of removal from State Court, but by way of a Petition, seeking an advisory opinion. As presented, the District Court

was required to give deference to the arbitrator's construction of the arbitration clause.

Most importantly, the District Court was required to determine whether the parties "clearly and unmistakably intended in their contract" to commit the issue of arbitrability (class treatment) to the arbitrator, per the arbitration clause which incorporated by reference, as part of the clause, the AAA rules in place at the time the underlying arbitration was commenced (JA 238-242, 286-317).

Had the District Court followed precedent limiting the scope of its authority to review a valid arbitration award and had it correctly reviewed the express language of the arbitration contract clause incorporating the AAA Rule, it could not have vacated the Award nor awarded summary judgment to Appellees.

Additionally, given the non-removal of any case from State Court, the lack of complete diversity, and the complete non-relevance of CAFA (28 U.S.C. § 1332 (d)(2)(A)), Federal jurisdiction has always been lacking in this matter.

# ARGUMENT

## I. The District Court Erred in Failing to Construe the Arbitration Contract Clause at Issue to Determine that the Clause Indicates a Clear and Unmistakable Intent of the Parties to Delegate to the Arbitrator the Decision on Class Treatment

The District Court misapplied the law, misconstrued the arbitration agreement and expanded its scope of review beyond that allowed by law. The Arbitration Agreement between the parties was signed on March 8, 2002. Section 4.3 states that the AAA rules for construction industry arbitrations, govern the arbitration at issue (JA 49-50). By contract, the parties specifically agreed that the arbitrator has the authority to make the decision as to the scope of the arbitration agreement – to include the question of Class treatment. Rule R-1 of the 2002 Construction Arbitration Rules sets forth the fact that if specified, these Rules become "a part of their arbitration agreement." ("The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the AAA or under its Construction Industry Arbitration Rules" (Rule R-1).) (JA 299) These Rules, and their content, are, in fact, a part of the Arbitration agreement between the parties.

In accordance with the plain language of Rule R-1, the parties are also deemed to have agreed to Rule R-9 as part of their Arbitration Agreement. Rule R-9 specifically states, "The arbitrator shall have the power to rule on his or her own

jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (JA 300-301)

In his Award, the Arbitrator recognized clearly that the AAA Rules were made part of the Arbitration agreement. He stated, in paragraph 6 of his Order the following:

> "By adopting the AAA rules, the parties have agreed that the AAA procedural rules become part of their arbitration agreement. The parties' arbitration agreement provides that an arbitration that occurs after closing of the sale and purchase of the home is to be conducted under the AAA rules for the Construction Industry. Rule 9 of those rules grants to the arbitrator the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement. Moreover, Rule 3 of the Supplementary Rules for Class Arbitration places the responsibility of construing the arbitration provision with respect to permissibility of class arbitration before the arbitrator. Because these rules are a fundamental part of the contract of the parties to arbitrate, I conclude that **by contract the parties have authorized the arbitrator to resolve the issue of whether class arbitration is provided for in the arbitration agreement**." (emphasis supplied) (JA 142-143)

The Arbitrator was within the scope of his powers, granted to him specifically by the parties to the arbitration agreement, to rule as he did. Any review of his order is limited to the scope of review afforded district courts in considering arbitration awards. And that scope is extremely limited. *U.S. Postal, infra.*

This Court, in its Opinion found that the Parties' agreement is silent on the question of class arbitration. The analysis set forth in *Oxford Health Plans, LLC v. Sutter*, 133 S.Ct. 2064 (2013) requires ascertaining the intent of the parties regarding

the arbitrator's jurisdictional scope. This Court's Opinion does not indicate that this needed analysis has occurred and simply relies on the fact that the contract is silent on class-wide arbitration without attempting to interpret the parties' intent on class-wide arbitrability based on the terms of the contract. Appellants submit that such an analysis was performed by the Arbitrator, and the interpretation of the contractual terms can only follow that of what the Arbitrator has determined.

While it is true that the Arbitration Agreement does not employ the term "Class Action," it does not follow that the Arbitrator's power to decide clause construction, and therefore the availability of the class mechanism, is not found within the Arbitration Agreement. As pointed out above, by incorporating Rules R-1 and R-9, the parties specifically agree that the arbitrator is empowered to determine the scope of the arbitration. (JA 299-301) Therefore, having authorized the Arbitrator to rule, the Arbitrator is empowered to decide class availability, and his decision is not subject to *de novo* review. Should this Court find that there is federal jurisdiction here, this decision must be reviewed pursuant to the highly limited scope of review accorded under Section 10(a)(4) of the Federal Arbitration Act (hereinafter "FAA") according to the *Oxford Health* decision.

The Sixth Circuit decision in *Reed Elsevier, Inc., v. Crockett*, 734 F.3d 594 (2013), is wholly different from the instant case in terms of the arbitration agreement at issue and in its lack of agreement as to the arbitrator's power. There, the clause at

7

issue provided: "Issues of arbitrability will be determined in accordance and solely with the federal substantive and procedural laws relating to arbitration." *Id.* at 599. The *Reed Elsevier* agreement says nothing about incorporation by reference of AAA Rules empowering the Arbitrator to determine the scope. The Court notes: "Thus at best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of class-wide arbitrability; and that is not enough to wrest the decision from the courts." Our agreement, on the other hand, is neither silent nor ambiguous – the AAA Rules specifically incorporated by reference are an integral part of the Arbitration agreement – they empower the arbitrator with full scope determination authority, and constitute a contractual agreement as to that issue.

This issue of an agreement pursuant to the arbitration clause is not discussed in this Court's *Del Webb* Opinion, nor was it presented. Instead, the opinion focused on the narrow issue of whether the decision to authorize class treatment in arbitration is a "gateway" or issue involving arbitrability – for a court to determine – or a procedural issue-for the arbitrator. This decision does not examine or comment on whether the parties in the arbitration clause agreed, by incorporation of AAA Rules, that the arbitrator had the power to decide class treatment. This Court's previous opinion nowhere changes the narrow scope of judicial review in vacating an arbitration award where the parties agreed that the arbitrator could make the decision, which is the case presented here.

*Oxford Health* marks the latest pronouncement by the United States Supreme Court in this arena of arbitration of class action matters. In *Oxford Health*, as here, there was an agreement that the arbitrator was to determine class availability. The United States Supreme Court reviewed the Third Circuit's refusal to overturn an arbitral class award in light of its earlier decision in *Stolt-Nielsen S.A. v. Animalfeeds International Corp.*, 559 U.S. 662 (2010). Once again, this decision is notable for reaffirming the severely limited review available to a court pursuant to section 10(a)(4) of the FAA, of an arbitrator's decision where the arbitrator was empowered to make the class treatment decision. Thus, the United States Supreme Court states: "So long as an arbitrator 'makes a good faith attempt' to interpret a contract, 'even serious errors of law or fact will not subject his award to vacatur.' (*Stolt-Nielsen* at 2068) "All we say is that convincing a court of an arbitrator's error – even his grave error – is not enough. So long as the arbitrator was 'arguably construing' the contract – which this one was – a court may not correct his mistakes under sec. 10(a)(4)." (*Stolt-Nielsen at* 2070)

*Reed Elsevier*, cited with approval by the District Court, notes that the AAA "Supplemental Rules for Class Arbitration" expressly state that these Rules should not be considered a factor in favoring or disfavoring class arbitration. To the extent relied upon by the District Court, Appellants would respectfully point out that those Rules cited by the *Reed Elsevier* Court, are the 2003 Rules, and not the earlier 2002

Rules R-1, and R-9 at issue here specifically incorporated by reference in the contract. The Court's comment in *Reed Elsevier* on the 2003 Rules has no applicability here, as not referring to applicable, specifically contracted-for rules, as this contract.

The essence of the *Reed Elsevier* opinion is that class-wide arbitration is not available unless the arbitration clause expressly includes language permitting it on its face. While this decision originates from Ohio, this concept is directly at odds with South Carolina decisional law, and as Appellants have consistently urged, since the Arbitration Clause on its face is to be interpreted pursuant to the South Carolina Uniform Arbitration Act, South Carolina decisional law should be applied.

No decisional law in South Carolina contradicts *Bazzle v. Green Tree Financial Corp.*, 351 S.C. 244, 569 S.E.2d 349 (2002) and its reasoning that Class treatment is available where an Arbitration agreement is silent. As Justice Toal stated, "If we enforced a mandatory, adhesive arbitration clause, but prohibited class actions in arbitration where the agreement is silent, the drafting party could effectively prevent class actions against it without having to say it was doing so in the agreement. Following the federal approach risks such a result where arbitration is mandated through an un-negotiated adhesion contract." *Id.* at 360. It is respectfully submitted that this result would directly flow from the District Court's existing ruling.

10

## II. The District Court, in Vacating the Arbitrator's Award, Erred in Reviewing the Matter *De Novo*

The procedural posture of this case dictates the standard of review to be applied by the District Court. This matter is not a case removed to the District Court from State Court pursuant to Federal Removal Statutes, but is a Petition to Vacate the considered Award of an AAA Arbitrator, chosen by the parties, Arbitration having been compelled by the Appellees (JA 101-105). Appellees, realizing the limited nature of judicial review when an arbitration award is reviewed, subsequently attempted to remove this case, but failed. As such, neither the Federal Arbitration Act, nor the South Carolina Arbitration Act, permit a *de novo* review, but rather limit this Court's reviewing powers to a determination of whether the Arbitrator exceeded his powers. This means that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error, does not suffice to overturn his decision." *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523,527 (4th Cir. 2000). There is no question here that the Arbitrator was construing or applying the contract in making his Award, as is evident on the face of the Award (JA 140-146). The District Court did not have the authority to vacate that Award, and in fact never addressed the issue. The District Court's interjection of its own interpretation of the Arbitration Agreement is clearly and plainly error.

While the denial of Class Action treatment in Arbitration has recently been upheld by the United States Supreme Court, those decisions turn on the fact that the Arbitration Contract drafters specifically included "Class Action Waiver" language in the Arbitration Clause, understanding correctly, that Class Action treatment decisions must be upheld in the absence of such a contractual agreement to waive it. Appellees could have inserted, as the drafter of these home sales contracts of adhesion, Class Action Waiver language. They did not. Since they did not utilize such language, and arbitration is contractual, Appellants may not be deprived of their South Carolina rights to class treatment in the absence of a specific contractual agreement to do so, supported by consideration. No such scenario exists here.

This case arose out of the filing, by Appellees on May 19, 2016, of a Motion to the District Court to vacate the AAA Arbitrator's Award (JA 106-139). This was squarely a request to review an Arbitrator's Award pursuant to the Federal Arbitration Act, (hereinafter "FAA") as the Petition states. This is not a matter removed to this Court pursuant to Federal Removal statutes. In fact, Appellees attempted to remove this case, and such removal was dismissed by the District Court's Order (*Carlson v. Del Webb Communities, Inc.*, No. 9:15-cv-292-SB (S.C. filed Sept.10, 2015).

The decisional law interpreting the Court's power to vacate the Arbitrator's award makes it clear that this Court is strictly limited in its authority to vacate the

Award, the Arbitrator's reasoning is entitled to great deference, and even if the District Court was convinced that an error was made in the award, it could not vacate the Award if the Arbitrator construed the Arbitration Clause. A facial reading of the Award demonstrates that the Arbitrator extensively discussed and analyzed the contractual language at issue, thus preventing the District Court from overturning it.

The case law from this Circuit, cited by Appellees in the Conclusion section of their Motion to Vacate (JA 138), makes the District Court's limited review powers clear. *Choice Hotels International v. SM Property Management*, 519 F.3d 200 (2008), and *Patten v. Signator Insurance Agency, Incorporated*, 441 F.3d 230 (2006). While these decisions resulted in vacation of Awards, they demonstrate that Arbitration Awards are only permitted to be vacated in situations either where an Arbitrator ignores and fails to enforce a specific provision of the Arbitration Clause (notice requirement – *Choice Hotels*), or where the Award turns on a provision not rationally inferable from the contract (*Patten*). Neither situation exists here.

*Choice Hotels* defines the limited scope of judicial review of arbitration awards. As Judge Hamilton writing for the majority notes: "In fact, the scope of judicial review for an arbitrator's decision is among the narrowest known at law," (*Choice Hotels* at 206). The party moving for vacation has a "heavy burden," (*Id.* at 207). The Court explained as follows:

"However, an arbitration award 'does not fail to draw its essence from the agreement merely because a court concluded that an arbitrator has misread the contract.' (citing *Three S Delaware, Inc. v. DataQuick Information Systems, Inc.*, 492 F.3d at 528 (4th Cir. 2007)), internal quotation marks omitted) In this regard, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' (citing *U.S. Postal* at 527)." Interestingly, even here where the Arbitrator permitted a default judgment by failing to enforce a Notice provision, Judge Traxler dissented, essentially opining the Arbitrator's Award was not subject to judicial review. "Courts of Appeals do not review the reasoning of arbitrators in determining whether their work draws its essence from the contract, but look only to the result reached; the single question is whether the award, however arrived at, is rationally inferable from the contract." (citing *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d at 193 n. 5 (4th Cir. 1998)).

In *Patten*, the Arbitration award was vacated because the arbitrator had wrongly imposed a one-year limitation period not found in the contract. There, the Court notes, "Moreover, an arbitration award does not fail to draw its essence from the agreement merely because a court concludes that an arbitrator has 'misread the contract.' (citing *Upshur Coals Corp. v. United Mine Workers, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991).) An arbitration award fails to draw its essence from the

14

agreement only when the result is not 'rationally inferable from the contract.' (citing, *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n. 5 (4th Cir.1998)." Additionally, an award fails to draw its essence from the agreement if an arbitrator has "based his award on his own personal notions of right and wrong." (*Patten*, at 235, citing *Upshur Coals*, 933 F.2d at 229)

Judge Luttig, dissenting in *Patten*, emphasized several times that courts are strictly limited in their ability to overturn arbitration awards. Even though he agreed with the majority that the Arbitrator's Award was "clearly erroneous," this finding is not enough to vacate the Award. "I cannot join its opinion, however, because under our precedents, clear error alone is insufficient to vacate an arbitrator's award." (*Patten*, at 237). He goes on to observe, "The level of deference that this court has bestowed upon arbitrators is extraordinary."

Finally, and importantly for the Court's consideration here, Judge Luttig states, "merely because an arbitrator's decision is not based on an agreement's express terms does not mean that it is not properly derived from the agreement; neither misapplication of principles of contractual interpretation nor erroneous interpretation of the agreement in question constitutes ground for vacating an award." (*Patten*, at 238 citing *Apex Plumbing*)

## III. Federal Jurisdiction Over This Matter Is, and Was, Lacking

In its Opinion, this Court found that there is Federal subject-matter jurisdiction over this case, holding that the District Court was permitted to "look through" Appellees' Federal Arbitration Act petition (hereinafter referred to as "FAA Petition") to determine whether the underlying action is predicated on an action that arises under Federal Law. The FAA Petition requested relief pursuant to Section 4 of the Federal Arbitration Act (hereinafter referred to as "FAA"), and outlined a cause of action pursuant to the Federal Declaratory Judgment Act. Both of these claims aimed at a matter already in arbitration before the AAA. Nothing in the FAA Petition addressed any existing State Court civil action. There are no statutory procedures permitting removal to a Federal Court of a matter that is in arbitration. In fact, no removal ever took place. Appellees' FAA Petition was not in any way a Petition to Compel Arbitration (as the precedent relied upon by this Court involves) rather it was a Petition to have a Federal Court compel a **manner** or **type** of arbitration, once arbitration was well underway. No existing precedent permits the exercise of the Federal Court jurisdiction over such a matter.

This Court discussed diversity of citizenship as well as the Class Action Fairness Act (hereinafter referred to as "CAFA") (28 U.S.C. § 1332) as jurisdictional underpinnings, but this rational is misplaced. Both of these concepts involve **removal** of civil actions pending in State Courts, not ongoing arbitrations.

16

No State Court civil action was ever removed to the United States District Court. Appellees could have removed the underlying State Court Amended Complaint seeking class relief, filed December 29, 2010, and received by Appellees on January 5, 2011 (JA 73-97) but chose not to do so. In fact, it chose to compel arbitration of those class claims (filed February 17, 2011). (JA 101-105) The Federal Court is a complete stranger to this controversy. Nor, of course, was any removal of an underlying State Court civil action undertaken pursuant to Diversity Jurisdiction following the Fourth Circuit's rationale that "SCSP is not a party to the federal proceedings, and its citizenship is therefore irrelevant. Further, SCSP did not agree to arbitrate with the Carlsons and is not a party to the underlying arbitration." *Del Webb* at 871.

The District Court had originally premised its jurisdictional position on the FAA. This Act (it is conceded by Appellees, and reaffirmed in the Opinion) cannot form a jurisdictional basis for Federal Court review. Likewise, the Federal Declaratory Judgment Act by itself does not create Federal Jurisdiction. An independent basis for Federal Jurisdiction is required. *Skelly Oil Company v. Phillips Petroleum Company*, 399 U.S. 667 (1950). None exists here.

The concept of "looking through" a petition to determine if an underlying action "arises under" Federal law is apparently taken from the decision in *Vaden v. Discover Bank*, 556 U.S. 49 (2009). *Vaden* involved a Petition to Compel

17

Arbitration, wholly unlike Appellees' District Court Petition to Compel a **type** of arbitration where Appellees had already been successful in compelling arbitration. In *Vaden*, arbitration was compelled by this Court, but the Supreme Court reversed. As the Supreme Court majority noted, "Section 4 of the FAA does not enlarge Federal Court jurisdiction; rather it confines Federal Courts to the jurisdiction they would have 'save for the arbitration agreement.'" (9 U.S.C. § 4.)

Nowhere in the Arbitration Agreement is there even a suggestion of Federal Court involvement. To the contrary, the Arbitration Agreement (a contract of adhesion **drafted by Appellees**) specifies,

> "After closing, every controversy or claim arising out of or relating to this Agreement, or the breach thereof shall be settled by binding arbitration as provided by the South Carolina Uniform Arbitration Act. The Act is found at South Carolina Code Section 15-48-10 et seq. The rules of the American Arbitration [Association] (AAA), published for construction industry arbitrations, shall govern the arbitration proceeding and the method of appointment of the arbitrator. The arbitration shall take place in Beaufort County or at a place mutually agreed upon by the parties." (JA 49-50)

Likewise, the Class Claims (found in the underlying State Court civil action filed December 29, 2010 and not removed to the United States District Court) do not "arise under" Federal Law. To the contrary, they arise under Rule 23 of the South Carolina Rules of Civil Procedure. The only way CAFA could have any relevance in this matter is if an underlying State Court civil action had been removed to Federal Court pursuant to 28 U.S.C. § 1332(d), which it was not. CAFA is, among other things, a removal statute. Thus, this Court's "look-through"

was in error, because the Court "looked through" to find a claim arising out of CAFA – a federal removal statute, from which it did not in fact arise, and to which it has absolutely no relationship, given the non-removal of the underlying State Civil Action.

Even if CAFA were found to have any applicability to the underlying claim, this Court simply assumed that CAFA would automatically create Federal Jurisdiction. This assumption cannot be made without a factual analysis of the claims and the well-known exceptions to CAFA jurisdiction, found in 28 U.S.C. § 1332 (d)(4)(A) – (d)(4)(B), respectively the "Local Controversy" and "Home State Controversy" exceptions. The Opinion provided no analysis of these exceptions which are significantly relevant to this underlying factual situation, and therefore, the concept that CAFA jurisdiction would automatically exist, is flawed.

In fact, Appellees' FAA Petition is only a request for an advisory opinion from a Federal Court, attempting to create jurisdiction where none exists. Appellees drafted the Arbitration Clause; they chose the forum; they agreed to the selection of the Arbitrator; they had opportunities to remove the State case to Federal Court pursuant to CAFA, and chose not to do so. A Federal Court should not now step in and act on their behalf to remedy those unilateral actions or inactions. Nothing Appellees did in the course of the matter created a Federal Question.

## CONCLUSION

For the foregoing reasons, the District Court's order and judgment should be vacated, and the matter should be remanded to the American Arbitration Association for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

This is a critical case involving the residences of some 2,200 retirees, and thus, oral argument is respectfully requested.

Respectfully submitted,


s/ W. Jefferson Leath, Jr.
W. Jefferson Leath, Jr.
jl@leathbouchlaw.com
Michael S. Seekings
mseekings@leathbouchlaw.com
Leath Bouch & Seekings, LLP
92 Broad Street
Charleston, SC  29401

Phillip W. Segui, Jr.
Amanda M. Blundy
Segui Law Firm, PC
864 Lowcountry Blvd., Suite A
Mount Pleasant, SC  29464

*Counsel for the Appellants*

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

    The word count of this brief is <u>4,531</u>.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word, Times New Roman, 14 point</u>.

April 26, 2017

<u>s/ W. Jefferson Leath, Jr. </u>
W. Jefferson Leath, Jr.

21

## CERTIFICATE OF SERVICE

I hereby certify that I have this April 26, 2017, filed the foregoing Opening

Brief of Appellants using the Court's CM/ECF system which will send notification

of such filing to the following counsel:

Henry Wilkins Frampton, IV
Alfred Victor Rawl, Jr.
MCNAIR LAW FIRM, PA
Suite 400
100 Calhoun Street
P. O. Box 1431
Charleston, SC 29402

Robert Leon Widener
MCNAIR LAW FIRM, PA
18th Floor
1221 Main Street
P. O. Box 11390
Columbia, SC 29211


                              s/ W. Jefferson Leath, Jr.
                              W. Jefferson Leath, Jr.

22